UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| In re: | Case No. 24-42067-357 |
|---|---|
| RONNIE LOGAN, JR. and ICY LAKITA LOGAN, | Chapter 7 |
| | Related to Doc. 28 |
| Debtors. | |

### MEMORANDUM OPINION

The Debtors, Ronnie Logan, Jr. and Icy Lakita Logan, have claimed an exemption in a workers' compensation claim under Section 287.260 of the Revised Statutes of Missouri. The Chapter 7 Trustee has filed an objection to the claim of exemption and a motion to compel the Debtors to turn over the proceeds of the workers' compensation claim, except for a small portion that is subject to other exemptions.

For the following reasons, I will sustain the Trustee's objection to the claim of exemption and grant the motion to compel the Debtors to turn over the disputed funds to the Trustee.

I.  **Undisputed Facts**

Ms. Logan was injured at work in October 2022. She pursued a workers' compensation claim and eventually settled the claim for $43,376.76, subject to attorneys' fees and costs. A check for that amount, which was payable to Ms. Logan and her workers' compensation attorney, was mailed to the attorney on May 15, 2024. Counsel received the check on or before May 20 and deposited the check into his firm's trust account that day. The bank placed a hold on the funds, releasing some on May 21 and the rest on May 28.

The funds from the settlement remained in the attorney's trust account when the Debtors commenced this Chapter 7 case on June 12, 2024 (the Petition Date). The next day, the attorney issued Ms. Logan a check for her share of the funds, which was $27,082.57. She deposited the check that same day.

The Debtors seek to exclude these funds from their bankruptcy estate by listing the workers' compensation claim as an exempt asset on their Schedule C. The Debtors originally claimed an exemption under Section 287.260 for 100 percent of the workers' compensation claim and stated that the amount was unknown. The Trustee objected to the exemption, arguing that the funds were not exempt under Section 287.260 because the funds had already been paid to the Debtors on the Petition Date.

The Debtors have since amended the claim of exemption to $27,082.57 to reflect the amount that they received. Additionally, they have added a $600 wild-card exemption and a $3,000 head-of-household exemption, both related to the workers' compensation claim. In response, the Trustee filed an objection to the amended claim of exemption and a motion to compel the Debtors to turn over $23,482.57 of the claim proceeds. The Trustee does not object to the wild-card exemption or the head-of-household exemption.

## II.    Analysis

### A.    Relevance of the *Erie* doctrine to exemptions

A threshold question in this dispute is the rule of decision. Under *Erie Railroad Co. v. Tompkins*, when a federal court decides a substantive state-law issue, the federal court is bound by the decisions of that state's highest court. *See* 304 U.S. 64, 78 (1938); *Bass v. General Motors Corp.*, 150 F.3d 842, 847 (8th Cir. 1998); *In re Wagner*, 259 B.R. 694, 698 (B.A.P. 8th Cir. 2001). If the state's highest court has not decided the issue, then the federal court's "role is to predict how the state supreme court would rule if faced with the same issue." *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (cleaned up). Although decisions of a state's intermediate court of appeals are persuasive authority, a federal court need not follow such a decision if it is "convinced by other persuasive data that the [state] Supreme Court would decide otherwise." *Academy Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 776 (8th Cir. 2024).

The Debtors suggest that state-law exemptions are different: *Erie* does not apply, and a bankruptcy court need not adopt a state court's construction of an exemption statute. They cite no cases in which a bankruptcy court or any other federal court refused to adopt a binding construction of state law, instead relying primarily on two decisions of the Eighth Circuit.

First, the Debtors cite *In re Benn*, 491 F.3d 811 (8th Cir. 2007). In *Benn*, the Eighth Circuit construed a Missouri statute according to generally applicable legal principles and recognized canons. *See id.* The Eighth Circuit concluded that the statute at issue, § 513.427, RSMo., was not itself an exemption statute, and that for a Missouri debtor to exempt property from a bankruptcy estate, there must be a Missouri statute or a non-bankruptcy federal statute that allows the exemption. *See Benn*, 491 F.3d at 815-16. The Eighth Circuit did not mention

*Erie* and did not refuse to adopt any binding construction of state law. Consequently, *Benn* offers no direct support for the proposition that the *Erie* doctrine does not apply under these circumstances.

The Debtors also rely on *In re Abdul-Rahim*, 720 F.3d 710 (8th Cir. 2013). In that case, the debtors claimed that an unliquidated personal-injury claim was exempt under the common law and the same statute that was at issue in *Benn*. *See id.* at 712. The Eighth Circuit panel held that *Benn*, which requires that a claimed exemption must have "a state statutory basis," was binding precedent. *Id.* at 713-14. Because there was no Missouri statute that allowed the debtors to exempt the unliquidated personal-injury claim, they could not claim the exemption. *See id.* at 712-14.

The Debtors' *Erie* argument gains some momentum from other aspects of *Abdul-Rahim*. The Eighth Circuit recognized that the Missouri Court of Appeals had criticized *Benn*, and in fact had construed Section 513.427 as an exemption statute, in *Russell v. Healthmont of Missouri, LLC*, 348 S.W.3d 784 (Mo. Ct. App. W.D. 2011). *See Abdul-Rahim*, 720 F.3d at 714. The *Russell* court had gone on to hold that unliquidated personal-injury claims are exempt under Section 513.427. *See Russell*, 348 S.W.3d at 787. In rejecting *Russell*—and holding exactly the opposite—the Eighth Circuit said, "[W]e cannot escape the language from *In re Benn*." *Abdul-Rahim*, 720 F.3d at 714. And it commented in a footnote that "the *Erie* doctrine's reach is limited in bankruptcy cases." *Id.* at 714 n.4.

If this were all, I might be persuaded to agree with the Debtors that the reach of *Erie* is limited when state-law exemptions are involved. But there are several additional considerations.

First, a little more than two years after *Abdul-Rahim*, the Eighth Circuit undertook an *Erie* analysis of another Missouri exemption statute, with no indication that there was anything controversial about that approach. *See In re Dittmaier*, 806 F.3d 987, 989 (8th Cir. 2015).

Second, the Eighth Circuit's treatment of *Russell* and *Benn* is most naturally understood as an application of the prior-panel rule rather than a reworking of fundamental principles of federalism laid out by the Supreme Court seventy-five years earlier. A panel of the court of appeals generally is bound by a prior panel's decision. *See United States v. Donath*, 107 F.4th 830, 836 (8th Cir. 2024); *Major Brands, Inc. v. Mast-Jägermeister US, Inc.*, 121 F.4th 661, 671 (8th Cir. 2024). There is some question about whether an intervening decision from a state court on a state-law issue may permit a federal court of appeals panel to rule differently than a prior panel has on that issue. *See Donath*, 107 F.4th at 836. It is not clear that there is such an exception in the Eighth Circuit, even if the intervening decision comes from the state's

highest court. *See id.* at 836 n.5 (collecting cases); *Major Brands*, 121 F.4th at 671 ("Major Brands cites no subsequent decision by the Supreme Court of Missouri that calls [a prior panel's] holding into question."). But *Russell* is not a decision of the state supreme court, and thus there is nothing particularly extraordinary about the Eighth Circuit's adherence to the prior-panel rule in these circumstances.

Third, the footnote in *Abdul-Rahim* about the reach of the *Erie* doctrine in bankruptcy is both accurate and addressed to a distinct issue. Many issues in bankruptcy cases are governed by federal law or principles of equity rather than state law. And that may be true of interest rates, the issue discussed indirectly in the footnote. *See generally In re Hertz Corp.*, 120 F.4th 1181, 1203 (3d Cir. 2024) (concluding that the absolute-priority rule "imposes the equitable rate of post-petition interest, whatever that may be"). But the issue in this case is the interpretation of a state statute that unquestionably governs this dispute. Nothing in *Abdul-Rahim* holds or suggests that *Erie* is so limited as to permit a federal rule of decision to apply here.

I thus disagree with the Debtors and conclude that the *Erie* doctrine applies when bankruptcy courts interpret state exemption statutes.

### B. Application of Section 287.260 to a claim that has been paid

#### 1. Authority on Section 287.260

"The Bankruptcy Code allows debtors to exempt certain property from their bankruptcy estates, which are otherwise comprised of all the debtor's legal or equitable interests in property." *Abdul-Rahim*, 720 F.3d at 712; *see also* 11 U.S.C. § 522(b)(1). Although Section 522 of the Bankruptcy Code generally allows the debtor to choose to exempt property using the federal exemptions in Section 522(d) or the law of the state where the debtor is domiciled and other federal law, states can "opt out" of the Section 522(d) exemptions. *Benn*, 491 F.3d at 813. States that have opted out "limit debtors to exemptions under applicable state law and federal law other than § 522(d)." *In re Shoults*, 649 B.R. 885, 889 (Bankr. E.D. Mo. 2023). Because Missouri has chosen to opt out of the Section 522(d) exemptions, Missouri debtors may claim only exemptions that are not listed in Section 522(d). *See id.*; § 513.427, RSMo.

The Debtors seek to exempt the proceeds of Ms. Logan's workers' compensation claim under Section 287.260, which states that compensation under the workers' compensation law that is "payable . . . , whether or not it has been awarded or is due, . . . shall be exempt from attachment, garnishment, and execution, [and] shall not be subject to setoff or counterclaim, or be in any way liable for any debt." § 287.260.1, RSMo.

If the funds resulting from the claim were "payable" to Ms. Logan under Section 287.260.1 on the Petition Date, the funds would be exempt property and would not be part of the Debtors' bankruptcy estate. But if the funds were no longer payable on the Petition Date, then the Debtors cannot claim the award as exempt property.

No Missouri Supreme Court decisions have interpreted Section 287.260.1, but the Missouri Court of Appeals construed the word "payable" in the statute in *SSM Health Care System v. Bartel,* 914 S.W.2d 8 (Mo. Ct. App. E.D. 1995). This state-law decision does not bind a federal court under *Erie,* but it is persuasive authority. *See Academy Bank,* 116 F.4th at 776.

In *SSM*, the court of appeals held that Section 287.260.1 does not exempt workers' compensation benefits after they are paid to the claimant. 914 S.W.2d at 10. That case involved a workers' compensation settlement in which the proceeds were paid to a trust, with the injured worker named as the beneficiary. *See id.* at 9. A judgment creditor sought to recover those settlement proceeds, asserting that the payment to the trust was void and asking the court for an order of execution. *See id.* The injured worker argued that the proceeds were exempt from execution under Section 287.260. *See id.* The court considered the language in Section 287.260.1 that defines exempt benefits ("'The compensation *payable* under this chapter, whether or not it has been awarded or is due'") and concluded that an award is no longer "payable" under Section 287.260.1 once the claimant has received the funds. *Id.* at 10 (quoting § 287.260.1) (emphasis in *SSM*). As a result, the payment to the trust was not exempt from execution. *See id.* at 11.

In another case, *Tiller v. 166 Auto Auction*, the court decided that the Labor and Industrial Relations Commission lacked jurisdiction over a claimant's motion to adjust his workers' compensation award because the award had already been paid. *See* 65 S.W.3d 1, 2, 6 (Mo. Ct. App. S.D. 2001), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. 2003). Although *Tiller* did not deal with any claims of exemption or reference Section 287.260.1, it is instructive as to how Missouri courts resolve issues that involve the timing of payment of workers' compensation claims. "Payment has been defined in Missouri law as the delivery of money or other valuable thing in the discharge of an obligation." *Tiller*, 65 S.W.3d at 4 (cleaned up). The court held that a workers' compensation award is deemed "paid" once the liable party issues the check and the claimant receives the check. *Tiller*, 65 S.W.3d at 5.

Bankruptcy courts have interpreted Section 287.260 in accordance with the Trustee's position. *See In re Jackson*, 173 B.R. 168 (Bankr. E.D. Mo. 1994); *In re Bonuchi*, 322 B.R. 868 (Bankr. W.D. Mo. 2005). In *Jackson*, Judge Schermer concluded that a debtor's workers'

compensation proceeds were exempt because the language in Section 287.260 was broad enough to encompass an unliquidated workers' compensation claim. 173 B.R. at 170. Although *Jackson* involved a claim that was "still payable to the debtor" when the bankruptcy case was filed, *Bonuchi* involved a liquidated workers' compensation claim, because the proceeds had already been paid into an annuity with the debtor named as the beneficiary. *Bonuchi*, 322 B.R. at 872. The court, applying the *SSM* decision, held that "[o]nce the lump sum compensation was placed in the annuity it was liquidated and no longer 'payable' to Debtor," and consequently, "the amount placed in the annuity was no longer exempt pursuant to [Section] 287.260." *Id.*

Resisting these conclusions, the Debtors focus on the language "whether or not it has been awarded or is due" in Section 287.260.1, arguing that compensation has not been awarded until the claimant has received it personally. But "awarded" and "due" in Section 287.260.1 cannot be understood outside the context of their relationship with the word "payable." The word "it" in the statute refers to "compensation payable." The statute could read "whether or not [the compensation payable] has been awarded or is due," without changing the meaning of the sentence. Consequently, "awarded" and "due" are both subordinate to "payable." *See SSM*, 914 S.W.2d at 11 ("Both these clarifying terms, 'awarded' and 'due,' refer to the benefit in its prepayment form."). If there is no "compensation payable"—whether that is because the claim has no merit or because the compensation has been paid already—then it does not matter if anything has been "awarded or is due." Thus, whether the workers' compensation funds were "payable" on the Petition Date remains the key issue.

"Payable" in Section 287.260.1 cannot reasonably be interpreted to encompass funds that a claimant has already received, because such an interpretation would depart from the express language of the statute. Words in a Missouri statute "should be given their plain and ordinary meaning whenever possible." *State ex rel. Jackson v. Dolan*, 398 S.W.3d 472, 479 (Mo. 2013) (cleaned up); *see also Acreback v. Myer*, 65 S.W. 1015, 1016 (Mo. 1901) (applying plain language of homestead exemption). Although "[e]xemption laws are to be liberally construed," bankruptcy courts "must be careful not to substantially depart from the express language of the exemption or to extend the legislative grant as expressed by Congress." *In re Helming*, 567 B.R. 357, 360-61 (B.A.P. 8th Cir. 2017) (cleaned up).

Money is no longer "payable" when it has been paid. The addition of "awarded" and "due" ensures that a claim is not subject to creditor interference at any point prior to payment, regardless of the stage of the adjudicative process. Thus, employers, insurance companies, the Labor and Industrial Relations Commission, and other parties involved in the system need

not concern themselves with the claimant's relationships with her creditors. But these terms do not cause an amount that has been paid to nevertheless remain payable.

        2.        Other state and federal exemption statutes

The distinction drawn in the cases discussed above is consistent with decisions of courts involving other exemption statutes that include the word "payable" or similar concepts. For example, the court in *Duzan v. Cantley* addressed the World War Veterans' Act of 1924, which provided that certain insurance proceeds that were "'payable'" to the claimant "'shall not be *subject to the claims of creditors* of any person to whom an award is made.'" 55 S.W.2d 711, 712 (Mo. Ct. App. W.D. 1932) (quoting 38 U.S.C. § 454 (1924) (repealed 1935) (emphasis in *Duzan*)). The court held that "[s]o long as a fund is 'payable' to a person it has not yet reached his hands, but when it has, it can no longer be said to be *payable* to him." *Id.*

And in *State ex rel. Nixon v. Mahmud*, the court examined the word "payable" in a Missouri exemption statute, § 513.430.1(10)(f), RSMo., holding that the statutory language "'any money or assets, payable to a participant or beneficiary from . . . a retirement plan' does not encompass money that has previously been paid to, or placed in the possession of, a participant or beneficiary" of a retirement plan. 11 S.W.3d 718, 720 (Mo. Ct. App. W.D. 1999) (quoting § 513.430.1(10)(f)).

Cases interpreting the phrase "right to receive" in the same statute also are instructive. Section 513.430.1(10) exempts from attachment and execution a person's right to receive, among other things, Social Security benefits, unemployment benefits, public-assistance benefits, veterans' benefits, disability benefits, and income from retirement plans. § 513.430.1(10), RSMo. Although such funds are exempt under Missouri's right-to-receive provisions before an individual receives them, courts have concluded that funds are no longer exempt after the individual receives them. *See, e.g.*, *In re Dittmaier*, 806 F.3d at 991 (holding that Section 513.430.1(10)(a) "does not exempt public assistance benefits received by the debtor prior to filing for relief in bankruptcy court") (cleaned up); *In re McCollum*, 287 B.R. 750, 755 (Bankr. E.D. Mo. 2002) (concluding that retirement-account proceeds were not exempt because debtors received proceeds prior to filing for bankruptcy); *In re McGoy*, 86 B.R. 174, 176 (Bankr. E.D. Mo. 1988) (concluding that debtor's stock certificates were not exempt because debtor had possession of them pre-petition); *cf. Mahmud*, 11 S.W. 3d at 720 (rejecting the argument "that it is the origin of the funds that make them exempt" under the Missouri right-to-receive statute).

The Supreme Court of the United States reached a similar conclusion when it construed a statute providing that "'[n]o sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure.'" *McIntosh v. Aubrey*, 185 U.S. 122,

124 (1902) (quoting 38 U.S.C. § 54 (repealed 1935)). The pension money was exempt only when it was "'due or to become due,'" and "money received is not money due." *Id.* at 124-25. The Court held that the statute protected funds before they were transmitted to the pensioner, but that once the pensioner received the funds, those funds could be seized. *Id.* at 125.

By contrast, when statutory language specifically protects funds after receipt, an individual may retain them. For example, the Supreme Court has held that government payments to a war veteran that were in his bank account were exempt from property tax because a statute granted such an exemption "'either before or after receipt by the beneficiary.'" *Lawrence v. Shaw*, 300 U.S. 245, 249-50 (1937) (quoting 38 U.S.C. § 454a (repealed 1958)). Similarly, § 288.380.11(1), RSMo., provides that unemployment benefits "received by any individual, so long as they are not mingled with other funds of the recipient," are "exempt from any remedy whatsoever for the collection of all debts," except debts for necessaries. *See also Capital One Bank v. Edison Credit Union*, 299 S.W.3d 662, 665-66 (Mo. Ct. App. W.D. 2009) ("[T]o allow garnishment of a judgment debtor's unemployment compensation would be contrary to the express prohibitions within . . . [Section] 288.380.11(1).").

Another statute written broadly enough to encompass funds that have already been received is 5 U.S.C. § 8346(a), which protects civil-service retirement benefits. The statute provides in part that "money mentioned by this subchapter is not . . . subject to execution, levy, attachment, garnishment, or other legal process." 5 U.S.C. § 8346(a). After examining the statutory language, legislative history, and case law construing this statute, the court in *State ex rel. Nixon v. McClure* concluded that it protects benefit payments that have already been received, noting "the all inclusive nature of the language" in the statute. 969 S.W.2d 801, 808 (Mo. Ct. App. W.D. 1998).

Particularly relevant here, the Eighth Circuit has concluded that Social Security proceeds that the debtor receives before filing for bankruptcy are excluded from the bankruptcy estate because 42 U.S.C. § 407(a) specifies that Social Security proceeds that are "'paid or payable'" are not to be "'subject to . . . the operation of any bankruptcy or insolvency law.'" *In re Carpenter*, 614 F.3d 930, 931-32 (8th Cir. 2010) (quoting 42 U.S.C. § 407(a)). The Missouri Court of Appeals reached a similar conclusion, holding that social security funds in a bank account were exempt from garnishment under Section 407(a) because such funds were "moneys paid." *Hatfield v. Cristopher*, 841 S.W.2d 761, 767 (Mo. Ct. App. W.D. 1992).

For these reasons, I conclude that if it were presented with the question, the Supreme Court of Missouri would decide that the proceeds of a workers' compensation claim are not exempt under Section 287.260 after they have been paid to the claimant.

### C. Significance of payment to the Debtor's counsel

As a fallback, the Debtors argue that the workers' compensation funds were "payable" to Ms. Logan because the funds were still in the attorney's trust account and were commingled with other funds on the Petition Date. I disagree, because the attorney was acting as Ms. Logan's agent when he received the funds.

"Under Missouri law, the attorney-client relationship is an agency relationship governed by general agency law." *In re Preston*, 395 B.R. 658, 664 (Bankr. W.D. Mo. 2008). An agency relationship is established when a client seeks and receives an attorney's advice and aid in matters related to the legal profession. *Erickson v. Civic Plaza National Bank of Kansas City*, 422 S.W.2d 373, 378 (Mo. Ct. App. W.D. 1967).

Here, an agency relationship existed between Ms. Logan and her workers' compensation attorney because she engaged the attorney to handle her claim. After settling the claim, the attorney received a check for the settlement proceeds and deposited those proceeds into his firm's trust account. The check was payable to Ms. Logan as well as her attorney. These circumstances show that the attorney received the settlement proceeds on Ms. Logan's behalf while acting as her agent. The fact that counsel commingled the funds with other trust funds in his client trust account is immaterial. A lawyer has an obligation to deliver client funds to the client promptly. *See In re Kayira*, 614 S.W.3d 530, 536 (Mo. 2021). And the Trustee has not sought turnover of any portion of the settlement that represents attorneys' fees or litigation expenses.

A claimant need not have direct control of funds for a workers' compensation award to be considered "paid." In *SSM*, a trustee held funds in trust for the benefit of the claimant. 914 S.W.2d at 9. And in *Bonuchi*, the funds were paid into an annuity with the claimant named as the beneficiary. 322 B.R. at 872. In both cases, the courts held that the workers' compensation awards had been paid. *See SSM*, 914 S.W.2d at 11; *Bonuchi*, 322 B.R. at 872. Here, it is sufficient that Ms. Logan's attorney received the settlement proceeds on her behalf.

### III. Conclusion

The proceeds of Ms. Logan's workers' compensation claim were paid to her, via her agent, before the Petition Date. Consequently, the Debtors cannot exempt the funds from their bankruptcy estate under Section 287.260.

I will thus enter a separate order sustaining the Trustee's objection to the claim of exemption and directing the Debtors to turn over $23,482.57 to the Trustee within 14 days.

This order will not affect the Debtors' claims under the wild-card and head-of-household exemptions, to which the Trustee has not objected.

Dated:  December 10, 2024
St. Louis, Missouri
cjs

_____
Brian C. Walsh
United States Bankruptcy Judge